UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LINDA TONKIN, | § | |
|     *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action H-06-111 |
| | § | |
| JOANNE B. BARNHART, | § | |
| COMMISSIONER OF SOCIAL SECURITY | § | |
| ADMINISTRATION, | § | |
|     *Defendant.* | § | |

## OPINION ON SUMMARY JUDGMENT

Plaintiff Linda Tonkin brought this action under the Social Security Act, 42 U.S.C. § 405(g), for review of the final decision of the Commissioner denying her request for disability insurance benefits.[1] Both Tonkin and Barnhart have filed motions for summary judgment (Dkts. 15, 17). Having considered the parties' submissions, the administrative record, and applicable law, the court concludes that Tonkin's motion should be DENIED and the Commissioner's motion should be GRANTED.

**I.     Background**

Tonkin, now 50 years old, filed an application for disability benefits on March 18, 2003. She claims disability since March 1, 1998, due to high blood pressure, congestive heart failure, chronic obstructive pulmonary disease, fluid

---

[1]     The parties have consented to the jurisdiction of this magistrate judge for all purposes, including final judgment.

retention, and a back impairment. (Dkt. 4-1). After her claim was initially denied, Ms. Tonkin had a hearing before an administrative law judge ("ALJ"), who denied her claim on June 18, 2005. *Id*. at 14. The ALJ found that plaintiff had degenerative disc disease, bronchitis, hypertension, and carotid artery disease which, although severe, did not meet or equal the requirements of any listed impairment. The Appeals Council declined to review the ALJ's decision on November 30, 2005 (Dkt. 4). Tonkin filed suit in this court on January 9, 2006, seeking judicial review of the Commissioner's final decision.

## II.     Analysis

Federal court review of a decision of the Commissioner denying Social Security benefits is limited to determining whether (1) the Commissioner applied the proper legal standard and (2) the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Substantial evidence is "more than a scintilla and less than a preponderance." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). The court does not re-weigh the evidence, try the questions *de novo*, or substitute its own judgment for that of the Commissioner. *Masterson*, 309 F.3d at 272. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

In order to qualify for disability benefits, a plaintiff must prove she has a disability, which is defined under the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382(c)(a)(3)(A); *Masterson*, 309 F.3d at 271.  The administrative law judge must follow a five-step sequential analysis to determine whether a plaintiff is in fact disabled:

1. Is the claimant currently engaged in substantial gainful activity, *i.e.*, working?  If the answer is yes, the inquiry ends and the claimant is not disabled.

2. Does the claimant have a severe impairment?  If the answer is yes, the inquiry proceeds to question 3.

3. Does the severe impairment equal one of the listings in the regulation known as Appendix 1?  If so, the claimant is disabled.  If not, then the inquiry proceeds to question 4.

4. Can claimant still perform his past relevant work?  If so, the claimant is not disabled.  If not, then the agency must assess the claimant's residual functional capacity.

5. Considering the claimant's residual functional capacity, age, education, and work experience, is there other work claimant can do?  If so, claimant is not disabled.

20 C.F.R. §§ 404.1520, 416.920; *Waters*, 276 F.3d at 718.  At step five, the burden shifts to the Commissioner to show that employment for the claimant exists in the

national economy.  *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991).

Tonkin's motion for summary judgment focuses on step three of the agency decision, asserting legal error on two grounds: (1) the ALJ failed to properly consider whether the combination of her impairments was medically equal to a listed impairment; and (2) the Appeals Council failed to obtain an updated medical opinion on equivalency, in light of new evidence not presented to the ALJ.  (Dkt. 15, pp. 5, 8).

### 1. ALJ's Finding of No Equivalence to a Listed Impairment

Tonkin appears to concede that her conditions, when viewed individually, do not meet the criteria of a listed condition.  However, Tonkin asserts that the ALJ erred by failing to consider her impairments *in combination*.  In particular, the ALJ allegedly failed to justify his step three determination by a specific discussion of medical evidence addressing her impairments in combination.

After finding that Tonkin's impairments (degenerative disc disease, bronchitis, hypertension and carotid artery disease) were "severe" under the regulations, the ALJ moved to step three of the analysis, which he introduced with the following summary statement: "None of the claimant's impairments, however, *either singly or in combination*, are attended by clinical or laboratory findings, which meet or equal the criteria for any impairment listed in Appendix 1."  (Dkt. 4

at 19) (emphasis added). He then proceeded to discuss in suitable detail the record medical evidence pertaining to three relevant impairment listings: section 1.04 (disorders of the spine),[2] section 3.02 (chronic pulmonary insufficiency)[3], and section 4.00 (impairments of the cardiovascular system).[4]

The regulations require the ALJ to "review the symptoms, signs, and laboratory findings about [a claimant's] impairments to determine whether the combination of [a claimant's] impairments is medically equal to any listed impairment." 20 C.F.R. § 404.1526(a). This regulation does not require the ALJ to articulate at length a separate medical equivalency analysis concerning the

---

[2] Regarding Tonkin's back impairments, the ALJ expressly considered medical records including an MRI of the cervical spine, an MRI of the lumbar spine, a CT scan, and three physical examinations. The MRI and CT scans did indicate anomalies, with some described as moderate. However, physical examinations performed by at least one physician demonstrated few, if any, physical deficiencies. More recent examinations showed no sensory or motor loss, symmetrical reflexes, and ambulation with a normal gait. Based on this substantial evidence, the ALJ properly found Tonkin's cervical and lumbar spine impairments were not of the severity to meet the criteria of Appendix 1, § 1.04. (Dkt. 4, p. 20).

[3] The sole medical record related to this impairment was a pulmonary function study, which the ALJ found did not meet the severity criteria § 3.02. (Dkt. 4, p.21). Tonkin does not directly challenge this finding.

[4] Heart function impairments were analyzed based on medical records including doppler testing, angiogram, x-ray, MRA, and a CT scan. These various tests revealed that Tonkin had left subclavian stenosis (but was still described as being "asymptomatic"); high grade stenosis of the right vertebral artery, moderate atherosclerotic plaque of the proximal aspect of the cervical ICA causing 25% to 30% stenosis, and moderate plaque of the anterior wall of the right ICA which resulted in stenosis of approximately 30% to 40% (but failed to show severe disease requiring surgery); normal heart size; no evidence of pulmonary congestion or diaphragmatic abnormality; mild-to-moderate narrowing of the left internal carotid artery, mild carotid narrowing in the right internal carotid artery, and internal stenosis of three arteries; mild congestive heart failure; and normal heart wall movement. The ALJ determined that these impairments were not severe enough to meet the listing criteria for a cardiovascular impairment under section 4.00. (Dkt. 4, p. 21).

combination of impairments.  It is enough for the ALJ to state, after reviewing the medical evidence pertaining to all impairments, that he has considered whether the combination of impairments meets or equals any listed impairment.  *See Raney v. Barnhart,* 396 F.3d 1007, 1011 (8th Cir. 2005); *Wilson v. Barnhart,* 284 F.3d 1219, 1224-25 (11th Cir. 2002); *Bledsoe v. Barnhart,* 165 Fed. Appx. 408, 411 (6th Cir. 2006); *Davis v. Commissioner of Social Security,* 105 Fed. Appx. 319, 324 (3rd Cir. 2004).  That is precisely what the ALJ did here.

Tonkin specifically complains that the ALJ should have considered both her cervical and lumbar impairments in evaluating medical equivalence to a spinal disorder listing under section 1.04.  But the ALJ's decision plainly discusses the medical evidence related to both these conditions in the same paragraph, concluding with a finding of no listed impairment under that section. (Dkt. 4, at p. 20). The balance of the ALJ's opinion cites numerous medical records in support of his step three finding, including physical tests, diagnoses of treating physicians, and opinions of non-examining physicians.  Thus, Tonkin's assertion that the ALJ failed to apply the proper legal standard by not basing the medical equivalence decision on medical findings is without merit.  The ALJ properly complied with the regulations in his step three analysis.

**2.      Additional Medical Evidence Considered By Appeals Council**

Tonkin submitted additional medical evidence to the Appeals Council after the ALJ's determination was issued, but prior to the decision of the Commissioner becoming final. (Dkt. 4, p.10). The additional evidence appears primarily related to pain associated with Tonkin's back condition, and includes results from another MRI, patient complaints of frequent falls, and a wheelchair prescription. *Id*., pp. 24-36. The Appeals Council considered these additional records, but found that "this information does not provide a basis for changing the Administrative Law Judge's decision." (*Id*., pp. 7-8).

Tonkin argues that this new evidence obligated the Appeals Council to obtain an updated medical expert opinion on equivalency, relying upon Social Security Ruling 96-6p. But that SSR imposes this requirement only when the additional medical evidence "in the opinion of the Administrative Law Judge or the Appeals Council may change the [medical] consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." Here the Appeals Council expressly stated its opinion that the additional medical evidence would not have changed the ALJ's decision, so the duty to obtain an updated medical opinion was not triggered.

Tonkin complains that the Appeals Council failed to explain why the new evidence would not have changed the ALJ's decision on medical equivalence.  It is true that the Appeals Council offered no specific reasons supporting its conclusion.  But Tonkin has cited no regulation or case law requiring it to do otherwise.  As the Commissioner points out, internal procedures no longer require the Appeals Council to include a detailed analysis of such post-hearing evidence when notifying the claimant of its action on a request for review.  *See* Office of Hearings and Appeals, Social Security Administration, Dep't of Health and Human Serv., HEARINGS, APPEALS, AND LITIGATION MANUAL (HALLEX), § I-3-5-80, 1993 WL 643150 (S.S.A).  An agency memorandum dated July 20, 1995 explained that the requirement for a detailed explanation was suspended due to an increased number of requests for review and the need to process them more effectively.  *Id.* at Exhibit I-3-5-90, 2001 WL 34096367 (S.S.A.).  Tonkin offers no persuasive grounds to challenge the validity of this Appeals Council procedure.  Nor does Tonkin bother to explain exactly why this new evidence would have altered the ALJ's step three finding.  This challenge to the Commissioner's decision must be denied.

### III.  Conclusion

The Commissioner's decision is supported by substantial evidence and based on the appropriate legal standards.  Therefore, Tonkin's motion for summary

judgment (Dkt. 15) is DENIED and the Commissioner's motion (Dkt. 17) is GRANTED.

Signed on October 18, 2006, at Houston, Texas.

_____
Stephen Wm Smith
United States Magistrate Judge